Good morning, Your Honors. I'm Deborah Bookout, and I represent Petitioner-Appellant John Seka. I'm going to attempt to reserve two minutes for a rebuttal. The certified issue in this case is whether certain of Seka's claims were procedurally defaulted. However, because the Court has asked that we address the Jackson and ineffective assistance of counsel claims, I want to start with those first and reserve some time at the end for my procedural default argument, if that's acceptable to the Court. Right. And I think the order made it clear, but I want to make sure both sides understand it now. We've not yet asked the State to respond to the uncertified questions, and the State should understand that if we decide to certify, it will have a chance to give a written response. Okay. Seka contends that counsel was ineffective in failing to present certain evidence of was so weak, prejudiced him. But in order to fully comprehend the prejudice to Seka as a result of counsel's failures, I think I have to address the Jackson claim first. And although this Court must review the Jackson claim with the additional layer of deference under AEDPA, our contention is that the Nevada Supreme Court's application of Jackson was objectively unreasonable, even with that additional added layer of deference. So the State charged Seka with first-degree murder under two alternate theories. In order to obtain that conviction, it had to prove that Seka willfully and with premeditation and deliberation killed the victims, or under the felony murder rule, that he killed the victims in the course of a robbery. With respect to Hamilton and premeditation, the State simply couldn't offer any reasonable explanation as to why Seka would have killed Hamilton. It offered two mutually inconsistent theories, one, that Hamilton was an innocent bystander who walked in on the murder of Lamani, or and, that Hamilton helped dispose of the body. In other words, that he somehow was involved in the killing of Lamani. The State, however, failed to present any evidence to support either one of those speculations. The evidence presented that linked Hamilton and Seka were Seka's fingerprints on wood that covered Hamilton's body, Hamilton's fingerprints that were on a beer bottle at the office location, the Synergy business location, and a piece of paper with Seka's name and number. Just to make sure I understand more, and we also know that Hamilton did some work, maybe odd jobs, for this air conditioning company. Right, right. So we know that he had some contact with both Seka and Lamani. Right. Which brings me to my evaluation of that evidence I just described. That evidence that I just described provided only a link between Seka, Lamani, and the business, and Hamilton, but we know that there was that link because Hamilton had done some odd jobs at the location. And so that would have been an explanation, could be an explanation for the piece of paper as well as the beer bottle at the location. The only other evidence was the Seka's fingerprints on the wood that was found on Hamilton's body, but we also know that Lamani's fingerprints were found on the wood that covered Hamilton's body, and that there were unknown fingerprints on the wood that covered his body, as well as on beer bottles that were found next to Hamilton's body. That suggests that there was, in fact, someone else that was responsible for Hamilton's murder. Well, I gather that this wood was used, that was being used to construct some sort of a humidor for this nascent cigar business, and it came from, I don't know whether it's the shop or however to describe it. It must have been smooth wood, like some sort of a laminate or something in order to take the prints. I believe it was testified that it was cedar, and then I think one of the witnesses referred to it as pine, but I think that might have been incorrect. Yeah, but it was anyway smooth enough to take prints, but I mean, perfectly sensible to have, I mean, if it just takes prints from being handled, it might have come from the lumberyard, it might have come from the guy that delivered it, it might have come from, you know, anybody. Right, which, you know, again, supports my contention that the Seka's fingerprints on the wood didn't establish anything other than what the court just described. It does not link Seka to killing Hamilton. It simply linked the two, and of course we know that there was a link between the two. Now, with respect to the State's theory about robbery as the underlying felony for felony murder, that evidence was even weaker. There was, in fact, no evidence that Hamilton was actually robbed at the time of his murder. What the State proved or established was that and that when his body was found November 16th, out in the desert, he had no money on him. But we also know that Hamilton was in the county jail from the 6th through the 12th, three days before his death. You didn't mention the fact that his jacket and bracelet had been removed from his body and were discarded at 1929 Western. Right. That's another factor, is it not? I haven't gotten there yet. Okay, sorry. Yes, I'll move to that then. We know that on the 12th when he was released from the jail he didn't have any money. What the State argued was the removal of his jacket or of his bracelet might have, you know, they presented that as evidence of robbery. Here's the problem. We don't know when the jacket was removed, assuming it was after. That more likely than of course wasn't the motive for the robbery. In addition, there was no, the bracelet evidence was pure speculation. There was no evidence that the bracelet belonged to Hamilton. Although it was found at the 1929 location, which was the scene of Hamilton's death, we believe, there was no evidence that the bracelet belonged to Hamilton or that he ever A little nick on his wrist that could have been associated with it, yeah. I'm not sure that the reasonable inference you can draw from that without knowing that the bracelet was his was, you know, as a result of it being yanked from him. The last factor I want the Court to consider is that if robbery was the motive for the murder, the robber left a gold nugget ring with stones on Hamilton, which was found on his body when his body was discovered. So, but even assuming that this evidence might prove that Hamilton was robbed, it doesn't prove that SACA robbed Hamilton. Now, with respect to Lamonti's murder Let me stop you right there, just because I want to highlight questions that I want the State to hear, because this is one of the things that concerns me with respect to Hamilton, the robbery, and the murder one conviction we get for Hamilton. We get a murder two conviction for Lamonti. It's entirely possible, it seems to me, that the jury convicted SACA of murder one with respect to Hamilton on the felony murder rule. And in order for there to be felony murder, there has to be murder in connection with a robbery. And if the robbery conviction goes away, the felony murder rationale also goes away. And while I think I'm right that it is robbery in I don't think that's robbery with respect to the felony murder rule. So if it's true that the jacket and the bracelet were taken from Hamilton after his death, that might be robbery, but it's not felony murder robbery. So those things I've got floating through my head, and I want to make sure that you have a chance to respond to my right and the State, you heard the questions. Just following up on Judge Fletcher's question, it seems to me that Nay versus State really goes to the issue of afterthought, forethought, and so on on the felony murder rule. I'd appreciate your addressing that, because I think it is very important in terms of the question that Judge Fletcher raised. And I did brief that. And the problem with Nay, I have to concede this, is that Nay was decided after Seka's case. And it isn't clear that that would have been made retroactive. So I would love to rely on Nay and say that that pretty much is my argument and sit down. But there is, in fact, no Nevada Supreme Court case law since Nay that indicates that it would have been retroactively applied. But beyond that, the fact of the matter is, even assuming that the jacket and the bracelet could all be tied to part of a robbery, although there's no evidence that the bracelet was his, there's still no linking Seka with that robbery. So, and I would agree with you, Judge, that if there's no robbery, there's no underlying felony for the felony murder. In addition, as I hope I pointed out, the premeditation evidence is also nonexistent. So it had to have been. And that was what the State really focused on with Hamilton was the felony murder. With Hamilton, I mean, with Lamonti, it's a little different. The State had difficulty with a coherent theory for Lamonti's death, but it did present three inconsistent theories, that Seka killed Lamonti because of Lamonti's abusive treatment, that Seka killed Lamonti in the course of a robbery, or that Seka killed Lamonti when Lamonti came after Seka with a gun. The jury's verdict of second-degree murder on Lamonti and the fact that a gun was not used in the robbery seems to point to the third theory, that Lamonti came at Seka with a gun. And this theory was presented through the testimony of Kramer. Kramer testified that Seka confessed to him that Lamonti came at Seka with a gun, Seka wrestled it from him, shot him, Lamonti fell up the wall, and as he's gurgling blood, Seka continues to shoot him. The problem with that is that there was no evidence to support Kramer's testimony. The coroner who autopsied Lamonti testified that Lamonti was, in fact, shot through the back, as well as in the head and chest area. In addition, this alleged incident that Kramer testified to was alleged to have occurred at the Synergy location. Well, Lamonti's blood was not found at the Synergy location. In addition, the .32 caliber bullet that was removed from the wall, which was similar in type to the bullets found in Lamonti's body, did not have evidence of blood or other physical evidence of Lamonti's body. So there's no evidence to support Kramer's somewhat incredible testimony. With respect to the robbery, the same evidence was presented that would have suggested that Lamonti was robbed that was presented for Hamilton. Lamonti was seen in possession of money on November 6th, and when his body was discovered on December 23rd, he did not have any money on his body. Again, although this evidence might be sufficient to prove he was robbed, it doesn't link Seka to the robbery. The fact is that the State's entire case against Seka was based on speculation and conjecture, and we know that speculation and conjecture cannot take the place of reasonable inferences. The Nevada Supreme Court's application of Jackson was objectively unreasonable, pursuant to AEDPA. But even if this Court could find that the evidence satisfies Jackson, it was so thin and so weak that anything that counsel might have presented in the form of the phone records or the witness testimony would have tipped the balance in favor of acquittal. We know that the State's theory was that Lamonti was killed on November 5th, and although the manager testified that Lamonti was alive on the 6th, the State spent a great deal of time in closing arguing that that was a mistake. Thus, any evidence that counsel could have presented through the phone records that would have supported or corroborated that date of Lamonti being alive... Now, have you looked at the phone records that should have been introduced? The only phone records that we have are phone records of Harris and the girlfriend. So you don't know what those phone records would have done? No. What I know is that Lamonti's records weren't subpoenaed. Well, but were on habeas, and you could have introduced those on habeas, right? Except they don't exist. Oh, they're gone. Right. I think I noted in the briefing that we tried to subpoena them, and they're non-existent. I missed that. Okay. Let me then back up a little bit. Counsel testified at the evidentiary hearing that partial records were obtained. It's not clear what the partial records he's referring to are. What I know is, from what I received from counsel, trial counsel, were only some records of Harrison and I think maybe Sika, but the records that were at issue were Lamonti's records. Those weren't obtained, and he freely admitted that. So if there was evidence that Lamonti was alive on the 5th or 6th, then the state's theory with respect to the premeditated murder of Hamilton falls because Hamilton was in custody on the 6th, and so he couldn't have been involved either as an innocent bystander or something more nefarious in Lamonti's death. In addition, we have the failure to present certain witnesses that counsel was aware of and plenty of time to have investigated. The state argued repeatedly that Sika was guilty in large part on the fact that he fled the jurisdiction. The witnesses that counsel was aware of but failed to present would have been able to provide evidence of Sika's actions and whereabouts after Lamonti's disappearance around the time of the 17th or 16th when Hamilton's body was discovered, all the way up to the holidays. Let me ask you this. I think it was introduced at trial that Sika gave to the police his address in Philadelphia? Yes. So you already had some evidence at trial that he wasn't really trying to run away. He's going to give home address in Pennsylvania, which is accurate, and then that's how they find him. Okay. And that's true, but we're talking about also the period after Lamonti was last seen and after the police came and investigated the Hamilton death, and then subsequent to that, that there was evidence that Sika was back and forth between that building, Spanish Trails, et cetera. And because the state spent so much time pointing out that Sika was guilty as a result of fleeing, I think that this, again, would have been enough to tip the balance in his favor. I just have a few seconds left, so I'm going to sit down. Good morning. May it please the Court. My name is Vic Schulze. I'm a senior deputy attorney general representing a warden in the state. Would you like me to address the procedural default issue or just go on to Jackson? Hang on a second. We've got the clock started. Okay. Why don't we just deal with the non-COA issues at the moment, and then we may get back to that. But obviously, so far, we've been paying attention as to whether or not we need to do COAs on any of these issues. I'd be happy to. Let me review very briefly, if I could, under the Jackson standard, the facts that support the Hamilton murder and robbery conviction and the specific facts that support the Lamonti murder and conviction. Let me back up just for a second and point out that what you have in front of you is not really a Jackson claim. I would point out that there's a lot of advocacy in that claim, but there's not a whole lot of accuracy in that claim. The claim, first of all, is based on challenging the credibility of the witnesses. That's beyond the scope of Jackson. Secondly, the Jackson, the alleged Jackson claim, the motion to expand, does not look at the evidence that supports the verdict from the position of the state and the jury's verdict. Second of all, it does not look at all the reasonable inferences that can be drawn from that evidence. What counsel has given you in the uncertified issue is nothing but a repackaging of the closing argument from trial. And that is, according to what the Supreme Court said in Jackson, that is not how you present a Jackson claim before a reviewing court. Counsel, I appreciate your point and would like you, if you wouldn't mind, to specifically direct the issue of, or address the issue of, what evidence is there in the record, maybe give me record sites, that ties Sika to Hamilton's robbery and that ties Sika to Lamani's robbery? I'm okay with the issue of before and after intent. I'm okay on that. But in the record, is there evidence that actually ties, either by inference or by direct testimony, that ties the robberies to him? Judge, I'd be happy to. Keep in mind that in this case, and let me back up just for a second, but I'm going to address your issue very directly. The Nevada Supreme Court pointed out that these murders and the robberies were part of a common planner scheme. And I don't think we can look at any of the evidence in these cases in artificial isolation. I think we have to look at the evidence from the standpoint of the totality of the evidence. Okay, that's fine. Let's include that larger picture. The record indicates that the motivation for the murders was the robberies. I would point out that from a global standpoint, you've got three guys working, I use that term loosely under the standards, under the evidence of the case, but three guys working loosely in this tiny little business. Two of the guys end up dead. Hamilton is killed at 1929, according to the DNA evidence, and Lamani is killed at 1933, where he and Sika live. I would also correct a factual statement that was made in the opening brief, and that is that these are separate buildings. The testimony was, this is a fourplex or fiveplex strip mall. The only thing that separates 1929 and 1933 is a common wall. You've got a front door and a plate glass window and a front door and a plate glass window. These two guys were killed 20 feet apart. So there's no 1931. Apparently not. But it's the same building they're killed 18 or 20 feet apart. The evidence that supports Lamani's murder is that Sika had stashed his wallet, his credit cards, his driver's license, his California ID and his birth certificate in the false ceiling from which access was gained by standing on the desk and reaching up there in 1933, which is the shop. Next to that was .357 ammo and .32 ammo. Lamani was killed with a .32. Hamilton was killed with a .357 next door. According to Torrey Johnson, the Las Vegas the revolver was misfiring. The revolver that killed Lamani was misfiring because the cylinder wasn't lining up. He could see similarities in three of the bullets that were taken out of Lamani's head by the San Bernardino corner. Lamani was the guy that was dumped over the state line here in California. One of those bullets matched the bullet that was found in 1933. So we know in 1933 Lamani. Well, no, we don't know that. We know that the bullets matched. We know the bullets matched and there is a reasonable inference that he was killed in 1933. But knowing is very different from a reasonable inference. But under Jackson, though, reasonable inferences are part of the analysis. Well, I'm not even sure I want to go with you so far as reasonable inference. I think there's a lot of evidence to suggest that he was killed elsewhere. But for me, that doesn't make any difference. The two girlfriends, Sika's girlfriend, Katerino, and Lamani's girlfriend, Harrison, both testified that Sika never had any money. The only way he could get money was he had to ask Lamani. We know Lamani was a big spender. The allegation of trial was he was spending the money of the Japanese investors on himself. He was whining and dying, his girlfriend in Las Vegas, at all the best restaurants and taking her to Lake Tahoe. When Sika talked to his girlfriend around November 3rd, when he got back from Philadelphia, he got back to Las Vegas, went to Philly for a couple days and came back. He told his girlfriend, Katerino, he had to leave. He had no place to live. He was out of money. So we know from two different witnesses, one from the state and one from the defense, that Sika didn't have any money. He was out of money at the time of the robberies. And according to Lamani's girlfriend who came to sorry, who spent significant amount of time with Sika and Lamani when they were doing their thing at the restaurants and in the casinos in town, Sika never had any money. Lamani was the guy who was the big spender. And Sika always had to be getting money from Lamani, always asking him for a couple of bucks. You know, you're not I mean, I don't blame you. I think in your position, I'd be doing the same thing. You're talking about all the stuff that works easily for you. You're not yet talking about the thing that actually is giving me the most problem. And that is to say, I'm concerned about the robbery conviction with respect to Hamilton and the felony murder theory. It seems to be what bumps it up from murder two to murder one. I'm not sure there's enough evidence here to support felony murder. Judge, the jacket and the bracelet. Say more. The jacket and the bracelet were taken for the reasonable inference under Jackson. The jacket and the bracelet were found at the murder scene where Hamilton was killed. We know he was killed in that room because of the DNA evidence. The Clark Sheldon Green, the Clark County medical examiner, was asked, well, there's a mark, as you said, there's a mark on his wrist. Is that consistent with a bracelet? I would point out it was referred to as a nugget type bracelet, rough in nature, not smooth. Was that consistent with a nugget type bracelet being torn from his body? Answer? Possibly. From that, the jury can imply that Sika killed the guy, took the bracelet off of his body during that crime spree. We know we removed the body. We know we removed the jacket because the bullet holes in the jacket match the bullet holes in the body. So could you now address the question as to whether or not, assuming, I mean, you don't have to agree that this is the sequence, but assume that Hamilton was shot, the bullet holes in the jacket suggest that he was wearing the jacket when he was shot. He dies. He's now lying there on the floor and the jacket is taken off and the bracelet is taken off. So this happens after the shooting. Does that support felony murder under Nevada law? That supports robbery under Nevada law. And robbery was the underlying charge for the felony murder. Yes. Well, but there's a Nevada case that says that post hoc robbery doesn't support felony murder. But we don't know that it was post hoc. We know there was a shooting and we know that the body had been articles removed. We don't know at that time if the guy was dead or alive. Yeah, I understand that. But my premise was and I didn't ask you to agree with me. My premise was that he was that he'd already been shot and he was lying there dead and dead or dying. Well, I said dead. You can say dying, but I said dead. And the jacket and the bracelet are then taken off. Yes. Does that support felony murder under Nevada law? Why? Because it was part of the same crime. The intent arose prior to the articles being removed from his body. That's the case as to whether the intent was before or after. Yes, sir. Yes. And according to both girlfriends, Sika is the guy who never has money. Lamani had money. We know that he was a big spender and we know that Hamilton had money. I'd also point out it doesn't make sense. We're talking about the jacket. Understood. Yes. If it was removed after, that's not enough. If it was removed after, but the intent was prior, then it is enough. And the evidence is the intent was prior. What is the evidence that it was prior? The evidence was prior is circumstantial. And evidence was that the motivation for both murders was the robbery. Sika is in a position by Halloween of 1998. He's got no money. He's working for a company that's broke. I think the term used by Detective Thosen was the company was defunct. So he's 3,000 miles from home. He's working for a defunct company. He's never been given any money by Lamani. He's out of money now. He tells his girlfriend, I don't even have any place to live. I got to get out of here. I got no money. There's your motive for murder. So therefore, I'm going to take this guy's jacket and I'm going to take his bracelet, but I'm going to leave the big ring with the stone. Judge, I'm only going on what he did, why he left the ring up to anybody's speculation. Maybe he couldn't get it off his finger. I don't know. Maybe he didn't like it. I don't know why criminals do what they do. But the bottom line is, we know the jacket was taken. We know that there is an inference of motivation prior to the shooting. Let me follow up with Judge Hugg's questions because it is to the same effect that if his motivation is he needs money, leaving a valuable ring on his finger is not consistent with that motivation. That's correct. Second, if his motivation is money, leaving a jacket to the extent it has any value at all, once it's got bullet holes in it, and leaving a bracelet in the room, just in the corner, doesn't seem... I mean, if he wanted money from the bracelet, it doesn't make any sense that he would leave the bracelet in the corner of the room. The inference drawn from the evidence is he took those items off the body, examined them, and then discarded them. That's the evidence from the scene. But tell me, tell me again about that bracelet. It sounds like the bracelet, the jacket I think had no value. I don't think we're going to fight about it. But the bracelet seemed to have had some value. But under Nevada law, it's any value. It doesn't matter if you and I would agree with Sika's conclusion. It's any value. No, you're not taking my point. Assuming that it is after... I mean, what I keep... I'm hung up on this question of afterthought robbery under Ney. And you're saying, but this doesn't necessarily look like afterthought robbery because he might have had the motivation before. Yes. But he... but the bracelet is left. So it suggests that, you know... But I judge... I understand what you're hung up on. I don't know if that bracelet came from Saks Fifth Avenue or if that bracelet came from one of those push carts in the mall and he paid $8.95 and up close... Excuse me, why don't you know? You're trying to prove the case against this guy. Because there was never any testimony at trial about the quality of the bracelet. All we know is it was a nugget-type bracelet. Well, you could have put it in. No, I wasn't. This was years before. Well, I say you to stay. I'm sorry, not you personally. No, I couldn't have because I don't know... This is a Jackson claim. I'm limited in a Jackson claim, as is opposing counsel, to the trial testimony. We can't bring in anything new. No, I understand. And so based on that, the evidence on... All we know about it was it was a yellow-colored nugget-type bracelet and it was taken from... I understand that it's a difficult issue. Just like the ring. We don't know if that ring had a diamond in it or cubic zirconium or if it was glass. What do we do, if anything, with the fact that he had quite a bit of money when he shows up? He has no money when he's incarcerated. Are you arguing that, in fact, he might have had money at the time of his murder? I'm arguing more than that. I'm arguing that there's an inference on that. He also didn't have that ring at the time he was... Let's stick with the money for a minute. It's the same issue, though, Judge. You're not taking my question. He had a lot of cash when he shows up in Las Vegas. Yes. When he's in jail, the inventory says he has no money with him. That's correct. Now, are you arguing that he, in fact, did have money even though... Yes. Okay, what's your evidence? That's the inferences that he had. Let me ask you this. We can go slowly, so you don't have to hurry. What evidence do you have that he had money after he gets out of jail? Because he's in jail. We know he doesn't have any money with him at that time. Understood. You're just saying, well, he could have had it somewhere else when he went to jail. That's the argument? No. There's one more piece of evidence that ties it. When he's in jail, not only does he not have evidence, he doesn't have any jewelry on him. That point was made. We know that when he's found in the desert, he's got the ring on him. And the SICA makes a major issue of the fact that he had nothing of value on him when he was arrested a couple days before. But he did have a ring on him a couple days after that when he was found in the desert. The fact of the ring neutralizes any meaning, in our opinion, under Jackson, that the fact he didn't have anything on him when he was in jail has any effect. Obviously, if that ring is worth anything, he had access to resources. And there's a fair implication, a fair inference, that if the ring suddenly shows up, yet the ring wasn't on his body a couple days before, the ring was somewhere else, the bracelet was somewhere else, and that money was somewhere else. OK. I got the argument. And isn't the real issue here not whether he had cash, but whether SICA thought he had cash, if that was one of the... Yes. So if he had heard... He'd seen, observed, heard from the girlfriend, whatever, that he had cash, even if he robs him, hypothetically, and he doesn't have any cash, that doesn't change the fact that he was motivated to rob him of cash. I think the evidence under Jackson fairly supports... Understand your issue, Judge. But I think when you look at the evidence and the inferences that fairly support what the jury did, this is a guy who's out of money, out of resources, and he's working for a defunct company 2,000 miles from home. He's got these two guys who are flashing money, flashing jewelry around. That's the motivation for these killings. We know there were robberies. We know there were murders. Certainly the murders aren't an issue. And if financial gain was the primary motivator for these cases... I'd also ask you to do one additional thing. Look at the similarity of the two robberies and the two killings. Now, I understand that one of these killings was not found to be premeditated because it was second-degree murder. But look at the exact similarity between the robberies and the murders. That shows whether the jury bought it. Under Jackson, that shows premeditation for both of these killings. Okay. Got it. Now, at this point, we have not certified any of these questions. If we decide to certify any of the questions, we'll notify you, give you a chance to file a written brief, give you a chance to file a response, and so on. Judge, I appreciate that. Thank you. Thank you. Would you like a minute? I think I have, like, 30 seconds left. Okay. We'll give you a minute and 30 seconds. Well, before I started, I just had a couple of points. I want to know if the Court has any questions based on Respondent's argument. Otherwise, I just have a couple of points to make. The only question I would have is the one I last asked Kim. And that is, if the evidence permits an inference through, say, the testimony of the girlfriends, that Seika thought that Hamilton had cash, even if he didn't have cash, does that make any difference in terms of the felony murder conviction? Well, first, I need to respond to the question by saying that Seika's knowledge of Hamilton having money has to be based on some sort of reasonable inference from the evidence. Right. And there isn't one because the testimony was that Hamilton was a vagrant who had a drug problem, an alcohol problem, potentially, and had apparently no place to stay. I don't believe that that evidence suggests that Seika could possibly have believed that Hamilton had money. So there's no evidence that his girlfriend or anybody said that he had? Maybe I'm mixing the girlfriends up. Maybe Hamilton didn't have a girlfriend. It was Seika's girlfriend and Lamani's girlfriend. Well, the testimony that opposing counsel referred to with respect to the girlfriends was that Seika himself never had any money. Right. And then he got money from Lamani. I know there was no testimony. You're saying there's no testimony anywhere in the trial about Hamilton ever having any money? No, there was evidence about Hamilton having money. Not whether there's no evidence from which we could infer that Seika believed that Hamilton had any money. Right. Right. And then that brings me to another point I did want to make. If the motivation was robbery for both murders, the question that the court has to wonder and where the reasonable inference from this would come from, Seika would then be killing his financial resource. If he had no money and the only money he ever had, according to the girlfriends that were referred to, was from his working with Lamani and Lamani giving him money, it isn't reasonable that he would kill that source of income. And on top of that, you have the fact that they had known each other for a long time and had been associates. The fact is, reasonable inference from the evidence has to be supported. And reviewing the reasonable inferences in favor of the prosecution suggests that the reasonable inferences have to be supported by logic. And the fact is, they aren't in this case. Okay. Thanks very much. Nice arguments on both sides. Seika v. McDaniel now submitted for decision. Next case on the argument panel, United States v. Gonzales-Largo.
judges: Hug, Fletcher W. , Smith M.